IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WILLIE G. SMITH, | |
| Plaintiff pro se, | CIVIL ACTION FILE |
| v. | NO. 1:13-CV-4219-WSD-WEJ |
| NATIONAL CREDIT SYSTEMS, INC., | |
| Defendant. | |

## ORDER AND
## NON-FINAL REPORT AND RECOMMENDATION

This matter is before the Court on plaintiff pro se Willie G. Smith's application to proceed in forma pauperis [1], and for a frivolity review pursuant to 28 U.S.C. § 1915(e)(2). After consideration of plaintiff's affidavit of indigence [1], the Court **GRANTS** in forma pauperis status to plaintiff; he shall be allowed to proceed without prepayment of filing fees or docket costs. In addition, for the reasons explained below, the undersigned **RECOMMENDS** that, pursuant to 28 U.S.C. § 1915(e)(2), plaintiff's claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e, and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), be **ALLOWED TO PROCEED** as any other civil action. The undersigned further **RECOMMENDS** that plaintiff's claims under 15 U.S.C. §

AO 72A
(Rev.8/82)

1681s-2(a) of the FCRA and for intentional infliction of emotional distress be **DISMISSED** for failure to state a claim.

## I. THE COMPLAINT

For an unspecified period before January 2005, plaintiff was receiving a housing subsidy from the United States Department of Housing and Urban Development ("HUD") and residing at Phillips Winters Apartments ("PWA") in Savannah, Georgia. (See Compl. [1-1] ¶¶ 12, 15.) In January 2005, PWA terminated plaintiff's housing assistance subsidy.[1] (Id. ¶ 15.) Plaintiff alleges that the termination of his subsidy was retaliatory, carried out to punish him for filing fair housing discrimination complaints and for prevailing on a malicious eviction claim against PWA. (Id. ¶¶ 17, 19.)

On August 26, 2008, PWA initiated a dispossessory action against plaintiff in the Magistrate Court of Chatham County for nonpayment of rent. (Compl. ¶¶ 16, 26.) The Magistrate Court granted a writ of dispossession to evict plaintiff and awarded to PWA $1,074.00 in back rent and court fees. (Id. ¶ 27.) In September

---

[1] PWA is privately-owned and subsidized by HUD under the name Independent Lifestyles, Inc. (Compl. ¶ 13.)

2

2008, the court reported the civil judgment to three credit reporting agencies. (Id. ¶ 28.)

In December 2008 (or thereafter), PWA, under the name Independent Lifestyles, Inc., hired defendant debt collection agency National Credit Systems, Inc. ("NCS") to collect a purported debt of $7,961.00 in back rent. (Compl. ¶ 29.) NCS reported a debt in that amount to TransUnion, a credit reporting agency. (Id. ¶ 30.) On December 6, 2012, plaintiff contacted TransUnion to explain that PWA had been awarded a judgment of $1,070.00, and that the $7,961.00 figure was erroneous. (Id. ¶ 33.) He requested a reinvestigation pursuant to his right under the FCRA, 15 U.S.C. § 1681i.[2] (Id. ¶ 31.) After investigating the matter, TransUnion deleted the debt from his credit report. (Id. ¶¶ 34-36.)

---

[2] Section 1681i provides that:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).

3

Between December 19 and 26, 2012, NCS resubmitted the purported debt of $7,961.00 to another credit bureau, Equifax. (Compl. ¶ 37.) Plaintiff contacted Equifax, explained that the debt amount was inaccurate, and requested a reinvestigation pursuant to § 1681i. (Id. ¶¶ 39-40.) On January 2, 2013, Equifax concluded its reinvestigation, which concluded that the $7,961.00 debt was valid. (Id. ¶¶ 41-42.)

Plaintiff claims the false debt has lowered his credit score and, as a result, he has been denied a $20,000 grant under the Georgia Dream Homeowner Assistance Program and has been unable to obtain a Hewlett Packard computer on credit and a credit card. (Compl. ¶ 43.)

The Complaint alleges that NCS violated the FDCPA, 15 U.S.C. § 1692 et seq. (Compl. ¶¶ 44-48), and the FCRA, 15 U.S.C. § 1681 et seq. (id. ¶¶ 49-56), and is liable for intentional infliction of emotional distress (id. ¶¶ 57-60). Plaintiff seeks the removal of the false debt from his consumer report, $7,000 in actual damages, $5,000 in statutory damages, and punitive damages in an amount the Court deems appropriate. (Id. Prayer for Relief.)

4

## II.　FRIVOLITY REVIEW STANDARD

"[A]ny court of the United States may authorize the commencement . . . of any suit . . . without prepayment of fees or security therefor, by a person who submits an affidavit [averring] . . . that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a). Pursuant to 28 U.S.C. § 1915(e)(2), however, a federal court is required to dismiss an in forma pauperis complaint if, at any time, the court determines that the action (1) is frivolous or malicious; (2) fails to state a claim on which relief can be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. Id. § 1915(e)(2)(B)(i)-(iii). Dismissal under that provision, however, does not "prejudice the filing of a paid complaint making the same allegations." Denton v. Hernandez, 504 U.S. 25, 34 (1992). "[A] litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." Neitzke v. Williams, 490 U.S. 319, 324 (1989).

A complaint is deemed frivolous if the Court finds that it lacks arguable basis in law or fact. Neitzke, 490 U.S. at 325. "In accordance with 28 U.S.C. § 1915, the Court will first examine the Plaintiff's Complaint, in its entirety, to determine whether an action should proceed based on the validity of the claim. The Court

5

AO 72A
(Rev.8/82)

considers that the Plaintiff is proceeding pro se and therefore, reviews the Complaint . . . with a less stringent standard than those Complaints written by attorneys." Monacelli v. Florida, No. 2:08-cv-397-FtM-99SPC, 2008 WL 4165486, at *2 (M.D. Fla. Sept. 5, 2008) (citing Trawinski v. United Techs., 313 F.3d 1295, 1297 (11th Cir. 2002)).

### III.   ANALYSIS

#### A.   Count I:  FDCPA Claim

Plaintiff alleges that defendant violated 15 U.S.C. § 1692e(2)(A), (8), and (10) by reporting a false debt to two credit reporting agencies. (Compl. ¶¶ 44-48.) To prevail on a claim under the FDCPA, a plaintiff must demonstrate that (1) he has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector under the Act; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. Frazier v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011). Each element of the FDCPA claim is discussed separately.

##### 1.   Collection activity arising from a consumer debt

This element has two requirements. First, there must be collection activity. Second, the activity must relate to a consumer debt. Frazier, 767 F. Supp. 2d at

6

1363.  "While the statute contains no clear definition of what constitutes a 'debt collection activity,' courts, in attempting to effect the purpose of the FDCPA, are lenient with its application." Sanz v. Fernandez, 633 F. Supp. 2d 1356, 1359 (S.D. Fla. 2009).  Here, PWA hired NCS to collect a debt purportedly owed by plaintiff. (Compl. ¶ 29.)  Accordingly, the undersigned concludes that the Complaint establishes plaintiff was the object of collection activity by NCS.

The undersigned next turns to whether this collection activity was aimed at collecting a consumer debt.  A debt is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that is] primarily for personal, family, or household purposes."  15 U.S.C. § 1692a(5); see also Oppenheim v. I.C. Sys., Inc., 627 F.3d 833, 837 (11th Cir. 2010) (per curiam) (the FDCPA applies "only to payment obligations of a (1) *consumer* arising out of a (2) *transaction* in which the money, property, insurance, or services at issue are (3) *primarily for personal, family, or household purposes*."). Plaintiff's debt arises from the rental of residential property.  Accordingly, the undersigned concludes that the collection activity relates to a consumer debt and the Complaint establishes the two requirements of the first element.

7

### 2. Debt collector

A debt collector is "any person who uses any instrumentality of interstate commerce or the mails . . . [t]o regularly collect [] or attempt[] to collect, directly or indirectly, debts owed . . . another." 15 U.S.C. § 1692a(6). Plaintiff alleges that NCS is a debt collector as defined in the statute. (Compl. ¶ 45.) As it appears from the Complaint that NCS is engaged in the business of collecting debts owed others, the undersigned concludes that plaintiff has established the second element.

### 3. Acts prohibited under the FDCPA

The Complaint alleges that defendant violated 15 U.S.C. § 1692e(2)(A), (8), and (10). Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "This broad prohibition is typically referred to as the FDCPA"s 'general ban.'" Druther v. Hamilton, No. C09-5503 FDB, 2009 WL 4667376, at *2 (W.D. Wash. Dec. 3, 2009) (quoting Dunlap v. Credit Prot. Ass'n, 419 F.3d 1011, 1012 (9th Cir. 2005) (per curiam). Subsections 1692e(1) through (16) set forth specific violations of that general principle. The list is intended to be non-exhaustive. See 15 U.S.C. § 1692e ("Without limiting the general application of the foregoing, the following conduct is a violation of this section . . . ."); Druther,

2009 WL 4667376, at *2 ("In addition to this general ban, section 1692e is divided into sixteen subsections that provide a non-exhaustive list of prohibited practices.").

### a.     Subsection 1692e(2)(A)

Subsection 1692e(2)(A) prohibits a debt collector from falsely representing the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A). "The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute." LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1190 (11th Cir. 2010) (per curiam). "Stating an incorrect amount of the debt undeniably violates § 1692e(2)(A)." McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 911 F. Supp. 2d 1, 59 (D. Mass. 2012) (citing Hepsen v. Resurgent Capital Servs., LP, 383 F. App'x 877, 880-81 (11th Cir. 2010) (per curiam)).

In Gilmore v. Account Management, Inc., No. 1:08-CV-1388, 2009 WL 2848278, at *7 (N.D. Ga. Apr. 27, 2009), this Court held that a debt collector violated § 1692e(2)(A) when it reported a false debt (double the amount owed) to a credit reporting agency. Similar to Gilmore, plaintiff contends that NCS misrepresented to TransUnion and Equifax the amount of an outstanding debt.

9

(Compl. ¶¶ 44-48.)[3]  Accordingly, the undersigned reports that plaintiff has stated a claim under § 1692e.

### b.     Subsections 1692e(8) and (10)

Plaintiff has stated a valid claim under § 1692e, the operative provision, through subsection (2)(A).  Accordingly, the undersigned refrains from addressing whether plaintiff may state a § 1692e claim under other subsections.  See Beattie v. D.M. Collections, Inc., 754 F. Supp. 383, 394 (D. Del. 1991) (refusing to address an alleged violation of § 1629e(10) where the conduct complained of had been specifically addressed by subsection 1692e(2)(A)); see also Gervais v. Riddle & Assocs., 479 F. Supp. 2d 270, 276 (D. Conn. 2007) (after finding a valid claim under a more specific subsection, "further analysis under § 1692e(10) is somewhat

---

[3] Plaintiff implies that NCS intentionally misrepresented the amount of the debt (see Compl. ¶ 48 (alleging that NCS's violations were among its standard practices towards consumers and were motivated by a desire to enhance profits), but intent is not an element of the claim, Gilmore, 2009 WL 2848278, at *7 ("The FDCPA imposes strict liability on the debt collector for misstatements of the amount owed and thus, does not require a showing of intentional conduct on the part of a debt collector.").  However, this allegation may be relevant to whether NCS can establish a "bona fide error" defense that will insulate it from liability. See 15 U.S.C. § 1692k(c) ("A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.").

AO 72A
(Rev.8/82)

duplicative") (internal quotations and citations omitted); Stuart v. AR Res., Inc., No. 10-3520, 2011 WL 904167, at *4 n.2 (E.D. Pa. Mar. 16, 2011) (finding sections 1692e(10) and (2)(A) "closely related and often brought in conjunction with one another" and that "alleg[ing] a violation of 1692e(10) rather than 1692e(2)(A) ha[d] no bearing on the sufficiency of the claim").

### B. Count II: FCRA

Plaintiff alleges that defendant violated § 1681s-2 of the FCRA. (Compl. ¶¶ 49-56.) Section 1681s-2 imposes certain duties upon NCS in its capacity as a furnisher of credit information.[4]  First, § 1681s-2(a) requires furnishers of information to submit accurate information to consumer reporting agencies ("CRAs"). 15 U.S.C. § 1681s-2(a). Second, § 1681s-2(b) requires furnishers to investigate and respond promptly to notices of customer disputes. Id. § 1681s-2(b).

Plaintiff alleges that defendant violated § 1681s-2(a) when, in furnishing information to CRAs, it failed to provide the agencies with notice that the

---

[4] FCRA places obligations on three types of entities: (1) consumer reporting agencies, (2) users of consumer reports, and (3) furnishers of information to consumer reporting agencies. Aklagi v. Nationscredit Fin., 196 F. Supp. 2d 1186, 1192 (D. Kan. 2002). The term "furnisher of information" is not defined within the FCRA. The term, however, encompasses NCS, which plaintiff alleges regularly furnishes information to one or more consumer reporting agencies. (Compl. ¶ 50.)

11

information reported was in dispute. (Compl. ¶ 56); see 15 U.S.C. § 1681s-2(a)(3) ("If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer."). However, the FCRA does not provide a private right of action for violations of § 1681s-2(a). Green v. RBS Nat'l Bank, 288 F. App'x 641, 642 (11th Cir. 2008) (per curiam).[5] Therefore, plaintiff has no claim under that subsection.

Plaintiff further alleges that defendant violated § 1681s-2(b). (Compl. ¶¶ 51-55.) Pursuant to this provision, certain duties are triggered when a furnisher of information receives notice of a dispute. After receiving the requisite notice, it is required to "conduct an investigation with respect to the disputed information," and "review all relevant information provided" to it by a CRA. 15 U.S.C. § 1681s-2(b)(1)(A)-(B). Regardless of the results of its investigation, it must report back to any CRA that notified it of the dispute. Id. § 1681s-2(b)(1)(C). If the investigation results in a finding that the furnisher provided incomplete or inaccurate information

---

[5] Enforcement of this provision is limited to federal agencies, federal officials, and state officials. 15 U.S.C. §§ 1681s-2(c), (d); id. § 1681s(c)(1)(B).

to the CRA, then it must report the results of its investigation to all other CRAs that received such incomplete or inaccurate information. Id. § 1681s-2(b)(1)(D). Finally, if the investigation is either inconclusive or results in a finding that the furnisher provided incomplete or inaccurate information to the CRA, then the furnisher, "for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the investigation promptly modify that item of information; delete that item of information; or permanently block the reporting of that item of information." Id. § 1681s-2(b)(1)(E). The furnisher must complete its investigations, reviews, and reports within the 30-day period after the consumer notifies the CRA of the dispute. Id. § 1681s-2(b)(2).

To state a claim under this section, a plaintiff must initially allege facts demonstrating that the requisite notice was given. In Green, the Eleventh Circuit held that a furnisher of credit information must receive the notice of a consumer's dispute from a CRA, not from a consumer. 288 F. App'x at 642; see also Stroman v. Bank of Am. Corp., 852 F. Supp. 2d 1366, 1375 (N.D. Ga. 2012) ("[O]nce a CRA notifies a furnisher of a dispute, this triggers the furnisher's obligation to conduct an investigation with respect to the disputed information . . . ."); Yelder v. Credit Bureau of Montgomery, L.L.C., 131 F. Supp. 2d 1275, 1288-89 (M.D. Ala. 2001)

13

("[A] furnisher of information has no duty under § 1681s-2(b) until a consumer reporting agency, and not a consumer, provides notice to the furnisher of information of a dispute."). Although plaintiff omits facts establishing notice from the Complaint's "Factual Allegations," under "Count 2" he alleges that defendant received notice of the dispute from him and from TransUnion and Equifax. (Compl. ¶¶ 53, 56.) He also sufficiently alleges that once NCS's statutory obligations were triggered, it did not conduct the required investigation of the disputed information, review relevant information provided by TransUnion and Equifax, and properly report the investigation results. (See id. ¶¶ 52-55.) Accordingly, the undersigned concludes that plaintiff has stated a claim under 15 U.S.C. § 1681s-2(b).

### C. Count III: Intentional Infliction of Emotional Distress and Humiliation

Plaintiff alleges that defendant intended to and did cause him severe emotional distress and humiliation by engaging in harassing conduct to coerce him into paying a debt he did not owe. (Compl. ¶¶ 58-60.) To succeed on a claim for intentional infliction of emotional distress in Georgia, a plaintiff must show "(1) that the defendant engaged in intentional or reckless conduct; (2) that the conduct was extreme or outrageous; (3) that there is a causal connection between the wrongful

14

conduct and plaintiff's emotional distress; and (4) that plaintiff's emotional distress is severe." Johnson v. Citimortgage, Inc., 351 F. Supp. 2d 1368, 1381 (N.D. Ga. 2004); see Yarbray v. S. Bell Tel. & Tel. Co., 409 S.E.2d 835, 837 (1991). Whether a claim rises to the requisite level of outrageousness and egregiousness is a question of law to be determined by the court. Lightning v. Roadway Express, Inc., 60 F.3d 1551, 1558 (11th Cir. 1995) (quoting Yarbray, 409 S.E.2d at 838). Liability has been found only where the defendant's conduct was "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Kaiser v. Tara Ford, Inc., 546 S.E.2d 861, 868 (Ga. Ct. App. 2001) (internal quotations and citation omitted).

This Court has previously rejected a claim for intentional infliction of emotional distress where the plaintiff alleged that the defendant transmitted erroneous information to credit reporting agencies and caused her credit rating to go down. See Stroman, 852 F. Supp. 2d at 1371, 1382; see also Vidrine v. Am. Prof'l Credit, Inc., 477 S.E.2d 602, 605 (Ga. Ct. App. 1996) (holding that collection agency's failure to communicate to credit bureaus that the plaintiff disputed a debt does not rise to the level of outrageousness required to support a recovery for intentional infliction of emotional distress). As this Court explained in Latimore v.

15

Gateway Retrieval, LLC, No. 1:12-CV-286, 2013 WL 791258, at *7 (N.D. Ga. Feb. 1, 2013), it could only locate three cases in which, in connection with debt collection activity, Georgia courts have found that the plaintiff stated a cause of action for intentional infliction of emotional distress.  In the first of those cases, American Financial & Loan Corp. v. Coots, 125 S.E.2d 689 (Ga. Ct. App. 1962), a bill collector terrorized the plaintiff and his family at gunpoint.  In Delta Financial Co. v. Ganakas, 91 S.E.2d 383 (Ga. Ct. App. 1956), the defendant's agent, while trying to gain entry into a residence to repossess a television set, threatened a small child with arrest.  Finally, in Stephens v. Waits, 184 S.E. 781 (Ga. Ct. App. 1936), debt collectors physically intimidated the plaintiffs as they were attempting to bury a family member.  The facts alleged here do not approach the degree of outrageousness present in the foregoing cases.

Furthermore, plaintiff has not set forth allegations showing that he suffered severe emotional distress.  To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),[6] a "plaintiff's obligation to provide

---

[6] "Failure to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."  Wilkerson v. H&S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (per curiam) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

16

the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted). Plaintiff does not meet the Twombly standard; he states in conclusory fashion that NCS's actions have caused him severe emotional distress. The only facts relevant to damages, however, demonstrate economic, not severe emotional, injury. While the Court may infer that being denied a loan and credit would cause plaintiff some degree of mental distress, it does not appear to be sufficiently severe. See Pierri v. Cingular Wireless, LLC, 397 F. Supp. 2d 1364, 1382 (N.D. Ga. 2005) (emotional distress not "severe" where the plaintiff experienced anxiety, depression, and stress as a result of work harassment and termination, but had not been treated by a healthcare professional and had not sought counseling).

Because the Complaint does not establish that defendant's conduct was sufficiently outrageous and that he suffered severe emotional distress as a result of defendant's outrageous conduct, the undersigned recommends that plaintiff's claim for intentional infliction of emotional distress be dismissed.

17

## IV. CONCLUSION

The undersigned **GRANTS** plaintiff's application to proceed IFP [1]. For the reasons explained above, the undersigned **RECOMMENDS** that plaintiff's claims under the FDCPA and 15 U.S.C. § 1681s-2(b) of the FCRA be **ALLOWED TO PROCEED**. The undersigned further **RECOMMENDS** that plaintiff's claims under 15 U.S.C. § 1681s-2(a) of the FCRA and for intentional infliction of emotional distress be **DISMISSED** for failure to state a claim.

The undersigned **FURTHER RECOMMENDS** that, upon adoption of this Report and Recommendation, this action be returned to the undersigned for further proceedings, including issuance of an Order regarding service of process.

**SO ORDERED and RECOMMENDED**, this 7th day of March, 2014.

_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)